WHITE STAR BUS LINE, INC., Petitioner, *v.* DISTRICT COURT OF SAN JUAN, Respondent.

No. 714. Argued May 19, 1930.—Decided November 12, 1930.

*Guerra Mondragón & Soldevila* for petitioner. *José S. Alegría* for the claimant.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Section 15 of the Workmen's Accident Compensation Act, Laws 1928, page 630, reads in part as follows:

"Within ten days after the service of notice, any party in interest may present certified copies of an order or decision of the Industrial Commission . . . , to the district court for the district in which the accident occurred with a petition for review, whereupon said court shall order the Industrial Commission to forward the record in the case, shall hear the parties to the controversy, shall render proper decision, and shall notify the parties. Decisions of the court shall have the same effect as a judgment rendered in a trial, but there shall be no appeal therefrom."

After an examination of the record including a transcript of the evidence adduced before the Industrial Commission, the district court, without passing upon the merits remanded the case for further investigation by the Industrial Commission. The district judge in making this order referred to an opinion filed by him in another case, *Agapito Alicea,* petitioner, v. *Industrial Commission,* defendant.

In the *Alicea* case the district judge held that he had the power to review the evidence adduced before the Industrial Commission and to pass upon the merits. He found that the commission had attached too much importance to a certain difference of opinion between medical experts; that the claimant had not been given a sufficient opportunity to present his evidence, and that the investigation as to the cause of the injury was incomplete.

There the question was whether a hernia had been caused by a fall from a ladder or whether it was a preexisting condition of long standing. As pointed out by the district judge this was a question which could and should have been definitely determined by further investigation.

In the instant case a number of eyewitnesses testified as to what they saw and heard at the time of the alleged injury. This testimony was all more or less to the same effect, and was not directly contradicted by the testimony of any other witness. One of these witnesses gave the names of several others who might have been called but were not examined by the commission. All the circumstances, however, point to the conclusion that their testimony would have been merely cumulative.

The important question before the commission was whether a nasal infection in the left nostril was caused by the introduction of oil accompanied by a blow upon the nose at the time of the accident or whether it was diffused from a furuncle of independent origin.

José Granado Rosario was a mechanic employed by the White Star Bus Line, a self-insured corporation. He was underneath a bus at work on the brake when the accident occurred. Bystanders testified that when he got to his feet he was wiping oil from his face and blowing his nose. There was a discharge of blood and mucus. At least one of the eyewitnesses said that Granado introduced a soiled handkerchief in order to remove oil from the nostril and that wit-

ness cautioned him as to the danger of so doing. Granado's explanation at the time was that some hot oil had flowed from the machinery into his nose, and that he had struck his nose with a wrench. He died twelve days later of septicemia.

Dr. Font Suárez who works in a clinic owned by Dr. Díaz García, a physician of the White Star Bus Line, examined Granado on the third day after the accident. He testified that the left side of Granado's face about the eye and the nose was inflamed and that Granado complained of pain in his nose and stated that the condition had existed since the day before; that witness found and decapitated a small furuncle in the left nostril; and that a furuncle is caused by the infection of the follicle at the root of a hair. Asked whether such an infection might have been produced by a burn or a blow on the nose, this witness answered: "If there is a wound, of course an infection may ensue." After a repetition of the statement that the furuncle was the result of an infected follicle (that being the usual cause) the witness added that he could not say in this particular case that the infection was the result of an injury because he had no proof of such injury. Asked if the introduction of hot grease into the nostril could cause an infection of a follicle the witness answered: "It might cause a burn."

The witness also said that he found no evidence of a burn, and that whether or not there would have been any indication of a burn on the third day thereafter would depend on the character of the burn. After a few other questions along the same line we find the following:

"Mr. Alegría:—Did you not state before that where a blow is received on the nose, producing an injury of the mucous membrane, it is sufficient to produce a furuncle? A.—No, that may cause an infection. Q.—May not that produce a furuncle? A.—That may cause an infection. Q.—But a furuncle in the nostril may be the result of a blow? A.—An abscess might form. Q.—Do you mean to say that an abscess might form near the place where the infection developed due to the rupture of the mucous membrane? A.— Yes, sir."

Dr. Díaz García, who was also a municipal hospital surgeon, saw Granado on his admission to the hospital about nine days after the accident, and testified that the inflammation had been produced by a pustule or an infection in the left nostril. The hospital record of the case which seems to be based on information obtained from the clinic where the first examination was made, recites that (presumably at the time of that examination) there was an abscess in the left nostril. This memorandum was made by a Dr. Cintrón, who did not appear before the commission. The hospital surgeon also said that Granado had an infected furuncle or boil (*nacido*) in his nose. Asked whether or not that result could have been produced by a blow, the witness answered: "Yes, if this man had suffered a blow, it was most probable that evidence of the blow could be detected, but it was not possible for the evidence of the blow or the burn to have disappeared within three days and for an infection to have ensued." Asked whether or not the infection might have been caused by hot grease or oil, he answered: "It is my impression that what produces the injury is heat, and what causes heat in the body is the burn; consequently, the injury may have been caused by a burn and not by a furuncle." Thereupon the following colloquy ensued:

"Mr. León Parra:—And if in trying to wipe the oil from his nose he had scratched himself with his finger nail, couldn't a furuncle have come from that? A.—If he had suffered a slight wound and such wound were infected. . . . But what Dr. Font Suárez has described is a furuncle. Q.—So that is not possible? May not a tumor form in the nostril of a person who scratches himself with a finger nail while wiping his nose? A.—An abscess, yes; everything is possible in medicine. What Dr. Font Suárez described is an infection of the follicle of a hair. Q.—Is that a supposition of his? A.—No, he saw that. Q.—But I think he said that that was the most probable thing which may have produced it? A.—No claim was made here till some time after the death of the laborer. Mr. Soldevila:—Supposing this furuncle had been in the nostril on March 3, 1929, could the infection have been contracted on the 9th? A.—

The doctor saw him on the 6th, at which time he stated that the day before his nose was inflamed; and his wife furnished the history of the furuncle since the day of the accident.''

Dr. Díaz García did not see Granado while in the clinic. The record does not disclose the source of his impression that the wife of Granado had furnished a history of the furuncle from the day of the accident. The testimony of Dr. Font Suárez makes no mention of any such narrative. The widow testified before the commission that Granado was well on the morning of the day of the accident, and at lunch time; that when he returned in the evening about eight o'clock, he complained of pain in his nose which was inflamed, and asked her to examine him, which she did; that she found nothing in the nostril and told her husband that if there was anything there it was very far up; that she did not see anything and her husband did not complain of any pustule; and that she accompanied her husband to the clinic but he went into the consultation room alone and she was not present at the examination.

A third physician, Dr. Leopoldo Figueroa, who had heard the testimony of the other two, explained that oil in the nostril, even though not hot enough to burn, might produce an irritation of the mucous membrane and cause the formation of an abscess which would culminate in septicemia. This witness also said that the testimony of the other two physicians did not conclusively establish the existence of a nasal furunculosis as a diagnosis; that such a theory could not prevail in the absence of the three characteristics of furunculosis; that the infection might have been due, for instance, to the presence of a specific germ (naming it), in which event the result would be a tubular abscess, not a furuncle; that in the instant case there was no furuncle; that the irritation may have been produced by a scratch from the finger nail; that "in medicine we can only say that each day we know less;" that the existence of an abscess, an infection which had spread, might be affirmed, but that the

theory of a furuncle had not been established; that a blow produces a bruise (*traumatismo*), a contusion produces a mortification of tissues, the mortification of tissues forms pus and septicemia results from the bacteria toxins when bacteria get into the circulation of the blood, and that a scratch upon the mucous membrane is enough to produce a local infection.

Obviously our statute does not contemplate a trial *de novo* in the district court. Beyond this there is no restriction on the power of the district judge. He is to hear the parties and to render a proper decision. The provision that such decision "shall have the same effect as a judgment rendered in a trial" is significant. A judgment rendered after a trial usually disposes of a case on its merits. Where, as in the instant case, the district court has before it a stenographic record of the hearing before the commission and both the majority and dissenting opinions delivered by different members of the commission, there is no adequate basis for a conclusion that the district judge can not review the facts. In such a case a decision on the merits is a proper decision. In such a case, no other decision could have the same effect as the judgment ordinarily rendered after a trial.

Even if the district judge were powerless to review the findings of facts made by the commission, he would still have the power to scrutinize the reasoning upon which the decision of the commission was based and to correct unwarranted inferences and illogical conclusions by the reversal of an unsound judgment.

The record in the *Alicea* case is not before us. In the case at bar both the claimants and the employer were represented by counsel and had ample opportunity to present all the evidence desired. The record can hardly be considered so incomplete as to require further investigation.

It may be, that here, as in the *Alicea* case, the commission was confused by the conflicting views of medical experts. If so, that was an error of judgment that should have been

corrected by the district court. That court may take judicial knowledge of the dictionary definitions of such terms as furuncle, boil, and abscess. By this we do not mean that the subject is not a proper one for scientific investigation. If either of the parties most concerned had desired to enlighten the commission further along this line, no doubt an opportunity to call other medical experts as witnesses would have been afforded on request. Neither of the parties had asked that the case be remanded for further investigation by the commission and we find no satisfactory reason for such action.

The district court should have either affirmed or reversed the decision of the commission.

The order appealed from should be reversed.